Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 23-1037 United States v. Juna Goncalves. At this time, would counsel for the appellant please introduce themselves on the record to begin. Good morning. Attorney Donna Brown for the appellant. And I'd like to reserve two minutes for rebuttal. The question before this court this morning is whether the district court's statement at sentencing that the defendant or the appellant was the manager or organizer, at least to his family members, whether that was sufficient to meet the requirement that the district court make... Did he refer to them as him as an organizer? No, what the district court did. Referred him as an organizer? Well, the question was whether he was a manager or organizer of his family. I'm not referring to him that way. Did the district court refer to him as an organizer? I thought the district court did not. I thought it referred to him as a manager, but not as an organizer. I guess I was tracking more the language of the statute than I was... Well, there's a list of things. I'm not sure that the showing as to each item in the list is identical. So I think it matters whether the district court picked one word rather than another on that list. Right, well, and then I think that they did find that he was an organizer, but... I thought they did not. I thought he found that he was a manager. I thought the government was saying, nonetheless, you could conclude that the thing applied because he was an organizer, which is a rather different argument. Well, our position is that either way, whether the court find him a manager or an organizer, there was not a sufficient finding for the role enhancement because they did not identify who he managed. And that's the issue before this court, is whether the appellant managed anyone in this case and whether there was a sufficient finding for this role enhancement. And that is the issue. And I think the district court did use the term manager, but I think for the purposes of what we're analyzing here, there wasn't a sufficient finding for this role enhancement. There's no objection below the pre-sentence report, correct? No objection by the... By the defense. Well, there wouldn't have been because the pre-sentence report found in his favor on this issue. So he would have had nothing to object to. But the government did object. They did object, yes. And they made a written objection. And in that written objection, they made specific findings that are in the appendix. But when that came up and then at the sentencing hearing, that was addressed, that objection, the parties were heard. And then the district court judge made the corresponding findings adverse to your client, correct? The court did. What we take issue with is what were the basis of those findings. And I think all parties agree, at least at this court level, that there was not a specific finding other than the reference to the family members, that there was not a specific finding as to what facts the court was relying on. Did you agree that if the district court found that your client directed his cousin and his brothers to take certain actions in connection with the offense and that they followed that direction, then the enhancement would apply? Yes, but we didn't... Okay, so then you're saying there was no such direction. And there was no finding that there was a direction. Well, let's do it in two different pieces, okay? Because we might say there was an implicit finding. So if we look at the record, as I see it, there is at least two statements in the record that might qualify as directions, each of which, best I can tell, are two and two nets. One is something to get out of the car or come to the car, and the other is a direction to him to contact one of the prospective people he's going to transact with. Ask him about the time, I guess it is, right? Those are two statements which you could read as directions. Based upon the case law, the appellant does not see those as directions. Why? Because those were, you know, it could be... Those are two people working together, and that is what we addressed in the brief, that all of the family members were working as, for lack of a better word, team members, and not under the direction of one or the other. Even under a team, there's always, put in sports terms, like a team captain or somebody. You have to have a leader or somebody, because if not, nothing's going to be done. Right. And the PSR specifically said that the facts that they analyzed, the appellant was not the leader. But the district court, this is to Judge Helpe's point, you're not contesting that those statements that I just identified of your client saying those things to Attunez were said? Right. What we're saying is we don't know if that's what the court relied on. Okay, so that's a separate thing still, which is... But as to that, if Cody had said to the defendant, come pick me up, that might support a finding that Cody was offering some direction. But the evidence is that the defendant said, I'm going to come pick you up. I don't understand why that wouldn't support the opposite. Yeah, I think what this comes down to, obviously it's a factual determination, and we've cited too many cases where the coordination of the events between the parties does not rise to a direction, such as the Al Rokabi case and the Garcia Sierra case. That in those cases, there were directions. Meet me here. I'll see you there. That was not the type of direction that rose to the level of... Were they stated as directions like that in those cases? I didn't recall them being stated that way. The question, I'm looking at my notes from the Garcia Sierra case, that there were arrangements for a meeting. Yeah, that's different than directing you to come somewhere. I agree with that, Your Honor. We are getting into language. If I say to someone, get my coat out of the closet, or say, would you please get my coat out of the closet, am I ordering them or am I asking them? And who doesn't the district court make that determination? Right, we don't know that they made that determination. Okay, so with respect to that, what leads you to conclude that they didn't? I suppose one issue is this. I read that the district court thought there were directions made not just to Atunez, but to the two brothers as well. Is that right? I think that's what the government asked this court to infer, that that's what the district court... Didn't the district court not say that he was a manager of the cousin and the brothers? The court did, but... So that must mean it thought that there was directions not just to the cousin, but to the brothers too, right? I think there's that inference, Your Honor. But as far as I can tell, there's nothing in the record to show that there was any direction made to the brothers. I think there's evidence, and it's set forth in our brief, that it went both ways. Well, not as to the brothers, but as to other people. As to the brothers, there's just nothing. Right. So I suppose that might support your position that we can't tell from the district court's explanation what it thought was a direction, since it's relying on the brothers having been directed when there's nothing in the record to show they were. May I respond? Yes. Thank you. I think that the issue here is the record. And what's important here, and we really rely on the Garcia-Sierra case, is there has to be a finding of the person who was directed. And I think the court here is saying, well, can't we infer this, can't we imply that? And that's exactly what the government is arguing. We take issue with that because it's hard to review that. And we've spent my entire time here just discussing what the judge below meant when he did not give specifics, and we're all left to guess. So that, I think, goes to the heart of our issue. Let me ask you, I think it's undisputed, or at least the judge found that, Gonsalves was the family's connection to the supply. Doesn't that go against your client, or it still doesn't? It still does not. I think those facts are very similar to the, I think it's the U.S. versus Al Rokabi case, where the defendant was kind of up the chain from the person who was setting up the deal. And the fact that she was, you know, she didn't have a supply, she was going to someone else because she didn't have a supply. And I think that that setting up of that deal to get the supply, and him being, you know, sort of, for lack of a better word, up the chain from the person who set the deal, that was not enough in that case to justify that role enhancement. Thank you. Thank you, counsel. At this time, if counsel for the appellee would please introduce herself on the record to begin. Good morning, and may it please the court. Yeah, thanks. Karen Eisenstadt for the government. The defendant here is the oldest brother of three, and as he put it, felt like he had to be the man of the house after his father passed in 2011. And this drug operation was the family business. This is how they supported themselves. And the defendant was the one who kept it running and organized his brothers and his cousin to ensure its success. Can I just ask you about your argument? I take it you're attributing some significance to a distinction between the term organizer and the term manager? Yes. Okay. And so was there a finding that he was an organizer? There were factual... Was there a finding that he was an organizer? No, the district court did not use the term organizer. It found that he was a manager. Right, manager, supervisor, and at one point leader. There was not a finding that he was a supervisor. He referred early on to it, but when he makes the finding, I think it's manager or leader, not organizer, correct? I would have to check the record, but I think that sounds correct. Definitely the word organizer was not used by the district court. In the government's view, what's the difference in terms of his showing as to a manager and an organizer? So a manager, I think as a preface, it's important to note that the commentary to the guideline points out that when we're dealing with these smaller criminal enterprises, so four participants or less, the distinction between the roles is somewhat blurred. It's not like a big organization where people have more clearly delineated roles. So I don't think the distinction is as clear in this context. And you can see from some of the cases the government cites, they're talking about organizer and Iliraza, for example, but you also see some indication of directions given. But that suggests to me that the government is of the view that to show you're a manager, you need to show a direction and that it was followed. I think what you need to show is that the defendant exercised some sort of authority or supervision or control over another participant on at least one occasion. That could be shown by a direction. That could be shown by a direction, but I think you don't necessarily need to have the actual statement. It doesn't need to be phrased as a command. Your brief asks us to focus on organizer, even if we don't focus on manager, correct? I think, as this court has said, it doesn't matter which label is applied. The court can affirm on any of the grounds. I understand that, but what I'm trying to figure out is in order to be a manager, is there any basis for saying that apart from evidence of there being a direction in this case? Because in your brief, when you talk about organizer, you're not showing that a direction was made. When you're defending the manager finding, you are focused on whether a direction was made. That's correct. That's where the difference in the case law focuses. Let's just stick first with the district court's finding of manager. Correct. What is the direction that the district court was relying on to find he was a manager? When you look at what the district court, as this court has said, we can determine what the district court relied on based on what the parties argued and what the district court said. What the district court said as it was discussing this enhancement was that the government had made a bunch of arguments about factual inferences the government contended you could draw from the record. Probation had directly countered those. There's two opposing positions on certain factual inferences. Those included Antunia's working as a runner for the defendant on at least some occasions. It included the defendant acting as the point of contact for the supplier for his family members, and it included organizing deals, as the government put it, for his brothers. So those are the three facts relating to the family members that were directly contested. Is there a direction in the record that the district court, in the government's view, relied on to find he was a manager? Yes. What is that direction? I think it was the direction in terms of Antunia's working as a runner for the defendant, which by definition is a subordinate role to the defendant engaging in drug deals. He was acting as a runner for the defendant. We don't necessarily need to see the actual words of the direction, so if you look at the Cruz case, for example, there was a 14-year-old girlfriend. We don't know, we don't have the actual back and forth between the defendant and the girlfriend of what the direction was, but the court said you can fairly infer that it was there because she referenced he when she was talking to the buyer, who was an agent, and you can infer just from the relationship she's 14 years old that he was the one who was directing her. But you couldn't make that inference here. Well, you can, but from different facts. What are the facts that support that? So the facts here, when you look at what happened on October 12th, so the Burger King incident, what you see happens here is that Donahue, the customer, called Antunia's and makes an order, but then he needs to call the defendant to essentially approve the deal. He said, want to bring me something? What do I tell him? There's no discussion of any wholesale sale going on between the defendant and Antunia's or a wholesale price or anything like that. They just go together to the Burger King. Antunia's goes inside and does the physical handoff in the bathroom, and he's meanwhile reporting back to the defendant in the car, and the defendant's telling him, hey, get there real time, et cetera, which I think is a direction. So is that the direction that we're relying on now? Well, I think that's a direction, but also the entire relationship is indicative of a runner, and that's what the government argues. I guess I'm not understanding. You said that in the other instance, we knew that the runner was a supervisor relationship because the runner was 14 years old, but here they're complete peers. So there needs to be something more than just the relationship to a firm. Right, so I think what you see here, like in the Jones case, for example, where the defendant was a supplier, and, of course, just being a supplier of others does not make you a manager or supervisor. But the court pointed to the fact that at least as to two there of his customers, there's indications that he was basically controlling the supplies. What's the indication here of that? That he called the defendant and said, what should I tell him? I mean, he needed the defendant to say, okay, we're going to do this deal. He didn't go off and just make his own sale to this customer. And the defendant then goes along to the deal, and there's evidence relating to this customer, Donahue, and then another customer, CW1, that he often does that, which is a very odd thing if it's an arm's-length supplier to do. It's indicative of supervising the transaction. Now, the district court also concluded that he was a manager of the brothers. That's correct. What supports that? I think the district court's use of the term manager was somewhat imprecise because, again, with respect to these smaller criminal organizations, the difference is somewhat blurred. I think what he meant was that he was organizing deals for his brother. So if you look at the situation, there's the supplier situation, but also the September 16, 2018 deal where another co-defendant, Medeiros, couldn't reach Coby. I guess the reason I'm asking these questions is one way to find out whether that's what the district court meant would be to vacate and have the district court look at the record and make a finding of the kind that you're saying we should just assume it made when it didn't use the word organizing. That's correct, but I think it's unnecessary here because the factual inferences are the things that require deference, that get clear error of view. And if the court finds that those factual inferences are reasonable, and supported by the error, and not clearly erroneous, then if the court finds that it fits into any four of the labels, it should affirm. There's really nothing. No, because if it compelled a conclusion that he was an organizer, I would agree with you. But if it doesn't compel that conclusion, and there's no finding on the face of the decision by the district court that he was an organizer, instead there's a finding that he was a manager, and then you say, well, we know he was a manager because of direction, but he said he was a manager as to the brothers, and there's no evidence of direction as to the brothers. Right, but if there is evidence of him managing his cousin on one occasion, the court needs to affirm. So it doesn't actually matter. How do we know the district court had the right understanding of what a direction was when it thought the brothers were being directed, and there's no evidence they were? I don't think the court was using the term manager. He didn't say, I'm seeing that he's commanding his brothers or giving direction to them. It was a reference to, as he said also, a leader, that he's sort of the one who's pulling them in, making these deals happen. Whether you call it an organizer or a manager doesn't matter for the two-point enhancement. And I think if you look at the Burger King incident, it absolutely supports the government's view that he was using Antunez as a runner. Antunez was the one doing the actual physical handoff transaction, and he was also the one the customers knew his name, and it was his phone that they were calling. So if the customers were ever apprehended, there's a layer of insulation for the defendant. That's why people use runners, to give that layer of insulation. Although there are other ways, as the defendant argues, you might interpret this relationship, because it's clear error of view, that doesn't matter. The interpretation that he's using Antunez as some type of runner, I think, is not clearly erroneous. It is a plausible inference from all of those facts. And I'd like to note also that the district court here had sentenced 16, the other 16, may I finish, the other 16 co-defendants in this conspiracy, including both of the defendant's brothers and Carlos Antunez, before sentencing this defendant. So to the extent there's a question of deference, the district court had a good sense, a grasp of this conspiracy, its extent, and how it operated. And as he found, if it hadn't been for this defendant, it would not have been the extensive, long-lived crime it became, which I think is something that supports the idea of organization, leadership, management, or supervision. Thank you. Thank you, counsel, at this time. Counsel for the appellant would reintroduce herself on the record to begin. She has a two-minute rebuttal. Thank you. Again, Attorney Donna Brown for the appellant. I want to address the argument as to whether the finding that I think the appellant's cousin was a runner, whether that's sufficient under the statute. That seems to be where the government has gone. And why the government says that is that's why people use runners. So they can distance themselves from sort of street-level deals. I think that would support a finding of leadership, but I don't think it supports a finding of direction. I think those are two different things, and the cases that have reversed from this court on those two issues have made that distinction. Leadership is not enough. You say they're sufficient to make a finding of leadership, nor organizer, but if we were to remand, you're conceding there's leadership for the two points, right? Right. And I think it's footnote seven of our brief that would still require to be remanded, that it's not harmless. But it could be remanded, but, again, you're conceding there's definitely some leadership in the issue there, so the judge can simply resentence for exactly the same sentence. I'm not conceding there's leadership. I'm saying at best that that's what they're arguing, that their argument isn't sufficient because at best they're arguing leadership. Our brief makes very clear that these were mutual relationships. It's stated over and over. Regarding Antunes? Because it seems to me, at least from the record, that Antunes was really working and responding to Gonzalez all the time. And, again, working together, even if one person is doing one job and another person is doing another job. From the record, it appears he's reporting to him. Right. And Gonzalez is organizing how to get the drugs and the distribution. Antunes is their opponent. So wouldn't there be a finer leadership and organization under the plain error? We would dispute that because there was other evidence, if I can just finish briefly, there was other evidence that the appellant accompanied people to drug deals. And, in fact, the government said, well, that's evidence of control because he wants to control his property. So they're taking two different scenarios and saying both of those are evidence that he's in control, one because he has someone do the deal and another one he accompanies the person to the deal and then says both of those things, which are different, are both evidence that he was in control. Can I just clear up one? Sure. There is a question whether, with respect to the adequacy of the explanation, we'd be on plain error for that because there wasn't a subsequent challenge to the explanation after it was given. With respect to whether there's a challenge to the basis for the finding, your contention is that's clearly not plain error because that challenge was made below. The thing that's a little puzzling to me is how we treat whether this is an explanation case or a basis case when the thrust of your argument, which I understand why you're framing it this way, is we have a general label attached to the conduct and no specific statement of what facts in that conduct are the basis for the label. And then your contention is there's some things in the record that if that's what he was relying on would not be enough. And there's some things in the record that if that's what he was relying on might be enough, at least if he made the finding that that's the thing I'm relying on. In a situation where we don't know which of the things the district court was actually relying on, is that a basis challenge or is that an explanation challenge? I think it's both. I think going back to the Garcia Sierra case, my recollection of that case is both issues were raised. And the court said we don't have to get to the basis challenge because, no, we don't have to get to the fact that the court didn't state specifics because there wasn't a basis. And I think this court can, looking to guidance from Garcia Sierra, find just on that alone that there's not enough of a basis. And if I can just end on the point that was really important from Garcia Sierra is that the reason we ask the courts to give some minimum specificity, it's not just for that particular criminal defendant. It's for reviewing courts and for the public and for the justice system as a whole, so that they can know that the case was decided on the right things. And I think that's where we are today. So I think the court can decide on either issue, but the court should decide on the fact that it did not articulate that basis, and that alone is enough to find for the appellant. Thank you. Thank you.